In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 14-1548 & 14-2114

KEVIN W. STANBRIDGE,

*Petitioner-Appellant,*

*v.*

GREGORY SCOTT,

*Respondent-Appellee.*

Appeals from the United States District Court for the
Central District of Illinois.
No. 12-cv-3067 — **Colin S. Bruce**, *Judge.*

ARGUED APRIL 22, 2015 — DECIDED JUNE 29, 2015

Before FLAUM, MANION, and HAMILTON, *Circuit Judges.*

FLAUM, *Circuit Judge.* Kevin Stanbridge is currently confined in a secured facility pursuant to a commitment order under the Illinois Sexually Violent Persons Commitment Act, 725 Ill. Comp. Stat. 207/1 *et seq.*, which allows for the civil commitment of individuals who have been convicted of a sexually violent offense and who suffer from a mental disorder that predisposes them to future acts of sexual violence. Stanbridge filed a petition for a writ of habeas corpus in the

Central District of Illinois, where he is confined. His petition does not attack any aspect of his current confinement; rather, it challenges a 2005 criminal conviction for aggravated criminal sexual abuse. At the time the petition was filed, Stanbridge had already served his full sentence for his 2005 conviction. The district court, therefore, dismissed Stanbridge's petition, concluding that it lacked jurisdiction to consider claims related to Stanbridge's criminal conviction because he is no longer "in custody pursuant to [that] judgment." 28 U.S.C. § 2254(a).

Stanbridge argues on appeal, as he did below, that he remains "in custody" pursuant to his sexual abuse conviction because that conviction serves as a necessary, though not sufficient, predicate for his current confinement. We conclude, however, that Stanbridge's civil commitment is merely a collateral consequence of his criminal conviction, and thus insufficient to render Stanbridge in custody pursuant to that conviction. We therefore affirm the district court's dismissal of the petition.

## I. Background

In 1999, Kevin Stanbridge was charged with aggravated criminal sexual abuse in Illinois. *See* 720 Ill. Comp. Stat. 5/12-16(d) (1998). The charge stemmed from an incident with his friend's fourteen-year-old son, the details of which are not relevant to our analysis. Stanbridge was initially convicted in 2001, but that conviction was reversed by the Illinois Appellate Court. *People v. Stanbridge*, 810 N.E.2d 88 (Ill. App. Ct. 2004). He was retried before a jury in April 2005 and found guilty. On May 3, Stanbridge was sentenced to seven years in prison, with credit for time served, to be followed by two years of mandatory supervised release. Stanbridge again ap-

pealed, but this time his conviction was upheld. *People v. Stanbridge*, No. 4-05-0585 (Ill. App. Ct. July 14, 2007) (unpublished order).

In May 2005, while Stanbridge's criminal appeal was pending, the State filed a petition to have him civilly committed under the Sexually Violent Persons Commitment Act. 725 Ill. Comp. Stat. 207/1 *et seq*. Under that Act, a person may be civilly committed if found to be a "sexually violent person," meaning that he or she has been found guilty of a sexually violent offense and "is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." *Id*. 207/5(f). Stanbridge was served with the State's petition on May 5, 2005. On May 10, Stanbridge completed his term of incarceration. (Almost all of the term had been served before he was sentenced after retrial.) Rather than being released, however, he was transferred that day into the custody of the Illinois Department of Human Services ("IDHS"), as a judge had concluded that there was probable cause to believe that he was a sexually violent person. *See id*. 207/30(c) ("If the court determines after a hearing that there is probable cause to believe that the person named in the petition is a sexually violent person, the court shall order that the person be taken into custody … [and] transferred within a reasonable time to an appropriate facility … ."). Stanbridge was confined to a secure IDHS facility for the duration of his two-year term of supervised release, which expired on May 10, 2007. At that point, Stanbridge's sentence for the aggravated assault conviction was completely discharged. Stanbridge, however, continued to be confined in an IDHS facility pursuant to the probable cause determination.

Stanbridge's civil commitment trial occurred in October 2007, after which a jury found him to be a sexually violent person. In February 2008, Stanbridge was ordered committed to a secure facility for institutional care and treatment until such time that he is no longer a sexually violent person. His commitment was confirmed on direct appeal. *In re Kevin S.*, No. 4-08-0163 (Ill. App. Ct. Nov. 19, 2008) (unpublished order). Stanbridge remains in the custody of the Illinois Department of Human Services.[1]

In February 2012, Stanbridge filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. In the petition, Stanbridge identified the 2005 conviction for aggravated criminal sexual abuse as the judgment of conviction that he was challenging. The petition raised seven claims pertaining to his criminal trial; the only claim that remains on appeal is Stanbridge's assertion that, during closing arguments, the prosecutor made multiple improper statements that violated Stanbridge's right to due process. Respondent Gregory Scott moved to dismiss the petition for lack of jurisdiction, arguing that Stanbridge was no longer in custody on his sexual abuse conviction. The district court agreed and dismissed the petition due to a lack of subject matter jurisdiction. We granted Stanbridge a certificate of appealability, finding that "Stanbridge ha[d] made a substantial showing of the denial

---

[1] Stanbridge also filed a petition for postconviction relief in state court in March 2008, in which he attacked his aggravated criminal sexual assault conviction. That petition was dismissed because the court determined that Stanbridge had no right to pursue relief under the Illinois Post-Conviction Hearing Act, as he had fully served his criminal sentence by the time he filed his petition. *People v. Stanbridge,* No. 04-08-0956 (Ill. App. Ct. June 23, 2013) (unpublished order).

of a constitutional right as to whether the prosecutor's closing arguments were improper." *Stanbridge v. Scott*, No. 14-1548 (7th Cir. June 13, 2014). We instructed the parties to also address the issue of whether Stanbridge is in custody such that he may challenge his aggravated criminal sexual abuse conviction.

## II. Discussion

We review de novo a district court's dismissal of a habeas petition for lack of subject matter jurisdiction. *Bhatt v. Reno*, 204 F.3d 744, 746 (7th Cir. 1999). Federal courts have jurisdiction over a habeas petition only if the petitioner is "in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(a); *see also Maleng v. Cook*, 490 U.S. 488, 490 (1989) (holding that the custody requirement is jurisdictional). Importantly here, the petitioner must be "'in custody' *under the conviction or sentence under attack* at the time his petition is filed." *Id*. at 490–91 (emphasis added). As a general matter, if a petitioner "is no longer serving the sentences imposed pursuant to" the conviction challenged in a petition, he "cannot bring a federal habeas petition directed solely at" that conviction. *Lackawanna Cnty. Dist. Attorney v. Coss*, 532 U.S. 394, 401 (2001).

In *Maleng v. Cook*, the Supreme Court held that a petitioner does not remain "'in custody' under a conviction after the sentence imposed for it has fully expired, merely because of the possibility that the prior conviction will be used to enhance the sentences imposed for any subsequent crimes of which he is convicted." 490 U.S. at 492. That is because a sentence enhancement is a collateral consequence of a prior conviction, and "once the sentence imposed for a conviction has completely expired, the collateral consequences of that

conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." *Id*. In the instant case, Stanbridge's sentence for his criminal conviction has completely expired. Furthermore, respondent argues, civil commitment under Illinois's Sexually Violent Persons Commitment Act is much like the sentence enhancement at issue in *Maleng*: both require the existence of a prior criminal conviction, but both are collateral, as opposed to direct, consequences of that prior conviction.

Stanbridge argues that his current civil confinement is more than just a collateral consequence under the relevant definition of that term. He points to our opinion in *Virsnieks v. Smith*, 521 F.3d 707, 718 (7th Cir. 2008), in which we referred to "the collateral consequences of a conviction" as "those consequences with negligible effects on a petitioner's physical liberty of movement." Stanbridge's civil confinement, of course, is more than a negligible restraint on his physical liberty of movement; therefore, he argues, it is more than a collateral consequence.

We now clarify our earlier statement in *Virsnieks*, and hold that a habeas petitioner is not "in custody" pursuant to a particular conviction unless his physical liberty of movement is limited in a non-negligible way, and that limitation is a *direct* consequence of the challenged conviction. Though "[t]here is some disagreement among the courts over how to distinguish between direct and collateral consequences," *Padilla v. Kentucky*, 559 U.S. 356, 364 n.8 (2010), in general, "[a] consequence is direct if it is imposed by the sentencing court as part of the authorized punishment, and included in the court's judgment." *User Guide Frequently Asked Questions*, Nat'l Inventory of Collateral Consequences,

http://www.abacollateralconsequences.org/user_guide/#q02 (last visited June 26, 2015). In contrast, a consequence is collateral "if it is not included in the court's judgment," no matter whether the consequence "is imposed on a person automatically upon conviction" or serves as a necessary predicate for a subsequent determination by a "court or administrative agency on grounds related to the conviction." *Id*.

The requirement that a consequence must be direct in order to render a petitioner in custody was necessary to the Court's holding in *Maleng*. There, it was unquestioned that the petitioner was suffering a significant restraint on his liberty—an enhanced prison term—because of the challenged conviction. The Court, though, held that the petitioner was not in custody with respect to the challenged (earlier) conviction because his enhanced sentence (from a later conviction) was not a direct consequence of the earlier conviction; rather, it was "pursuant to the second conviction that the petitioner [was] incarcerated and [was] therefore 'in custody.'" *Maleng*, 490 U.S. at 493.

The rule that a consequence does not render a petitioner "in custody" pursuant to a conviction unless it is both a direct consequence of that conviction and a non-negligible restraint on physical liberty is also consistent with our holding in *Virsnieks*, the other cases mentioned in that opinion, and the cases cited by Stanbridge in his briefs. Collateral consequences, even those that impose a significant restraint on one's freedom of movement, such as being placed in federal detention awaiting deportation, do not render a petitioner "in custody." *See Ogunwomoju v. United States*, 512 F.3d 69, 75 (2d Cir. 2008); *Resendiz v. Kovensky*, 416 F.3d 952, 956–57 (9th Cir. 2005), *abrogated on other grounds by Padilla*, 559 U.S. 356;

*Broomes v. Ashcroft*, 358 F.3d 1251, 1254 (10th Cir. 2004), *abrogated on other grounds by Padilla*, 559 U.S. 356. Similarly, direct consequences do not render a petitioner in custody where courts have held that they do not place a significant restraint on his freedom of movement. *See, e.g., Smullen v. United States*, 94 F.3d 20, 25–26 (1st Cir. 1996) (order of restitution); *Harts v. Indiana*, 732 F.2d 95, 96–97 (7th Cir. 1984) (suspension of driving privileges); *Hanson v. Circuit Court of the First Judicial Circuit of Ill.*, 591 F.2d 404, 407 (7th Cir. 1979) (order to pay fine). And, of course, consequences that are neither direct nor a significant constraint on freedom of movement do not render a petitioner "in custody." *See, e.g., Virsknieks*, 521 F.3d at 719–20 (requirement to register as a sex offender);[2] *Lefkowitz v. Fair*, 816 F.2d 17, 20 (1st Cir. 1987) (revocation of medical license).

In contrast, consequences of a conviction that are both direct and a non-negligible restriction on the physical liberty of movement do render a habeas petitioner "in custody." For example, the Third Circuit has held that a sentence of 500 hours of community service satisfies the "in custody" requirement. *Barry v. Bergen Cnty. Prob. Dep't*, 128 F.3d 152, 161 (3d Cir. 1997) ("[A]n individual who is required to be in a certain place … or to perform services[] is clearly subject to

---

[2] In *Virsnieks*, there was a dispute over whether the petitioner's requirement to register as a sex offender was a direct or collateral consequence of his guilty plea. 521 F.3d at 716. We declined to definitively answer the question, instead concluding that the state court's determination that it was a collateral consequence was not "contrary to, or … an unreasonable application of, clearly established Federal law." *See* 28 U.S.C. § 2254(d)(1). Regardless, we found that the petitioner was not in custody in that case because the registration requirement did not interfere with the petitioner's freedom of movement.

restraints on his liberty not shared by the public generally."). Likewise, in *Jones v. Cunningham*, 371 U.S. 236, 242–43 (1963), the Supreme Court held that a petitioner who had been placed on parole was still in custody. Parole is a direct consequence of a criminal conviction, as it is served in lieu of the remainder of a prison sentence, and imposes a significant restraint on freedom of movement. *See id*. ("Petitioner is confined by the parole order to a particular community, house, and job at the sufferance of his parole officer. … [C]onditions and restrictions such as these … significantly restrain petitioner's liberty to do those things which in this country free men are entitled to do.").

As applied to this case, it is clear that Stanbridge is not in custody pursuant to his sexual abuse conviction. [3] Although

---

[3] We note that a petition for a writ of *coram nobis* may sometimes be an appropriate vehicle to address the constitutionality of a prior conviction, the sentence for which has been fully served. *See Chaidez*, 133 S. Ct. at 1106 n.1 (2013) ("A petition for a writ of *coram nobis* provides a way to collaterally attack a criminal conviction for a person … who is no longer 'in custody' and therefore cannot seek habeas relief under 28 U.S.C. § 2255 or § 2241."); *see also United States v. Morgan*, 346 U.S. 502, 512 (1954) (holding that federal courts are authorized by the All Writs Act, 28 U.S.C. § 1651, to issue writs of coram nobis). The bar for obtaining such a writ is high, however—it is "reserved for compelling events" and is usually limited to "[c]laims that could [not] have been raised by direct appeal." *United States v. Keane*, 852 F.2d 199, 202 (7th Cir. 1988). Moreover, the petitioner must be suffering "an ongoing legal disability"—a collateral consequence—and the petition must "present[] questions that could not have been resolved at the time of conviction." *United States v. Bush*, 888 F.2d 1145, 1146 (7th Cir. 1989). Stanbridge has not asked us to construe his petition as a petition for a writ of *coram nobis*, and, in any event, the fact that he had the opportunity to raise this issue both at his criminal trial and on direct appeal would likely preclude the use of this writ.

his physical liberty of movement is restrained in a non-negligible way, that restraint is not a direct consequence of his criminal conviction. Rather, his civil commitment is clearly a collateral consequence of his criminal conviction, as it was not part of the judgment in the criminal case. *See George v. Black*, 732 F.2d 108, 110 (8th Cir. 1984) (holding that the possibility of confinement pursuant to civil commitment proceedings after the expiration of a criminal sentence is a collateral consequence); *cf. Chaidez v. United States*, 133 S. Ct. 1103, 1108 n.5 (2013) ("[E]ffects of a conviction commonly viewed as collateral include civil commitment.").

Stanbridge is, of course, in custody pursuant to his civil commitment order, meaning that the federal courts would have subject matter jurisdiction to hear a habeas challenge to the constitutionality *of that custody*. *See Ambrose v. Roeckeman*, 749 F.3d 615, 616 (7th Cir. 2014) (considering on the merits the habeas petition of a petitioner challenging his civil commitment under the Illinois Sexually Dangerous Persons Act). Moreover, "a petitioner challenging a current sentence 'as enhanced by [an] allegedly invalid prior conviction' satisfies the 'in custody' requirement of § 2254 even though the sentence imposed for the prior conviction has expired." *Martin v. Deuth*, 298 F.3d 669, 671 (7th Cir. 2002) (quoting *Maleng*, 490 U.S. at 493). In other words,

> *Maleng* holds that when sentence **A** has expired but has been used to augment sentence **B**, the prisoner is "in custody" only on sentence **B**. The consequences of sentence **A** for sentence **B** do not yield continued "custody" *on sentence* **A**, the Court concluded. [However,] a person in custody on sentence **B** may contend that *that*

> custody violates the Constitution if it was augmented because of an invalid sentence **A**. … Whether the federal court with jurisdiction over the custodian holding the prisoner on sentence **B** may inquire into the validity of sentence **A** is a matter of comity and the rules of preclusion, not of "custody."

*Crank v. Duckworth*, 905 F.2d 1090, 1091 (7th Cir. 1990).

The district court in this case would, therefore, have jurisdiction to consider Stanbridge's petition if it were construed as an attack on his current civil custody—Stanbridge's civil confinement being analogous to "sentence B" in the above hypothetical. At oral argument, however, Stanbridge's counsel asked that we not construe his petition in that manner. There is a strategic reason behind this request: if we construed Stanbridge's petition as an attack on the civil commitment judgment, the district court would have jurisdiction over the petition but would be barred from addressing the merits of his claim that his civil commitment is predicated on an invalid prior conviction. That is because the question that we left open in *Crank*—"[w]hether the federal court with jurisdiction over the custodian holding the prisoner on sentence **B** may inquire into the validity of sentence **A**"—was definitively answered in the negative by the Supreme Court in *Lackawanna County District Attorney v. Coss*, 532 U.S. 394 (2001). There, the Court held that "once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid." *Id*. at 403. "If that conviction is later used to enhance

a criminal sentence, the defendant generally may not chal-
lenge the enhanced sentence through a petition under § 2254
on the ground that the prior conviction was unconstitution-
ally obtained." *Id*. at 403–04.

There is at least one exception to that rule: a petitioner
may challenge the prior conviction when it "was obtained
where there was a failure to appoint counsel in violation of
the Sixth Amendment." *Id*. at 404. That exception would be
inapplicable here because Stanbridge was assisted by coun-
sel throughout his criminal case. The Supreme Court in *Coss*
mentioned the possibility of a further exception where "a
habeas petition directed at the enhanced sentence may effec-
tively be the first and only forum available for review of the
prior conviction." *Id*. at 406. But again, we need not decide
today whether such an exception exists, as Stanbridge asks
us not to construe his petition as an attack on his civil com-
mitment.[4]

---

[4] Stanbridge, we note, had ample opportunity to—and actually did (albe-
it unsuccessfully)—contest his criminal conviction on direct appeal. It is
true that Stanbridge did not have the opportunity to seek federal habeas
review of his criminal conviction while he was still "in custody," as the
Illinois Court of Appeals did not rule on his direct appeal until after he
had completed his prison sentence and his term of supervised release.
Nothing in *Coss*, however, suggests that the opportunity for direct re-
view in state court is inherently inadequate. Rather, the *Coss* opinion re-
fers to specific situations in which direct review may be inadequate, such
as when a state court, without justification, refuses to rule on a properly
presented constitutional claim, or when newly obtained evidence, una-
vailable to the state appellate court, strongly suggests that the petitioner
is innocent. 532 U.S. at 405. The Court's use of those examples suggests
that, in the absence of such defects, the opportunity for direct review in
state court would preclude a petitioner from invoking the second, hypo-
thetical *Coss* exception. *Cf. Abdus-Samad v. Bell*, 420 F.3d 614, 630–31 (6th

No matter how Stanbridge's petition is characterized, then, he cannot be successful in this case. Stanbridge asks that we characterize his petition as an attack only on his criminal conviction, and so we must affirm the district court's dismissal for lack of jurisdiction.

### III. Conclusion

We AFFIRM the district court's dismissal of Stanbridge's petition for a writ of habeas corpus for a lack of jurisdiction.

---

Cir. 2005) (holding that the "first and only forum available for review" exception could not be invoked where petitioner's claim had been reviewed by a state court, but not a federal court, on collateral review).