In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2961

MICHAEL A. KELLEY,

*Petitioner-Appellant*,

*v.*

GREG ZOELLER, Indiana
Attorney General,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:14-cv-00196-TLS — **Theresa L. Springmann**, *Judge.*

ARGUED MAY 21, 2015 — DECIDED AUGUST 28, 2015

Before WOOD, *Chief Judge*, and ROVNER and WILLIAMS,
*Circuit Judges.*

ROVNER, *Circuit Judge*. On October 1, 1974, a then-eighteen-year-old Michael Kelley walked into a Hammond, Indiana, sandwich shop with a gun and demanded that an employee hand over all of the money in the store. Kelley walked out with $28 and a robbery conviction that would shadow him for more than thirty-seven years. In 2011, a federal judge in Missouri

used that robbery conviction to enhance Kelley's sentence for a firearms offense. Kelley now claims that the State of Indiana should have expunged the robbery conviction under a plea deal that he struck in 1975, and that the Missouri court should not have used the conviction to lengthen his federal sentence. We affirm the judgment of the Indiana district court dismissing for lack of jurisdiction.

## I.

In January 1975, Kelley entered a plea of "not guilty" to state charges stemming from the sandwich shop robbery, and his case was continued to April 1975 for trial. But between the time of his plea and the trial date, Kelley was charged by federal authorities with conspiracy to distribute a controlled substance. Represented by counsel, he later pled guilty to both the state and federal charges. Kelley claims to have struck a deal with both state and federal authorities: he would plead guilty to all charges and serve a federal sentence of seven years. His state sentence of ten to twenty-five years would be suspended while he served the federal sentence. Upon successful completion of the federal sentence, his federal conviction would be expunged pursuant to the Federal Youth Corrections Act of 1950 ("FYCA"). *See* 18 U.S.C. § 5021(b) (repealed 1984); *Tuten v. United States*, 460 U.S. 660, 662–68 (1983); *United States v. Woolsey*, 535 F.3d 540, 549 (7th Cir. 2008*)*. Kelley claims that state authorities similarly agreed to "set aside" his robbery conviction upon successful completion of his federal sentence. At the time of Kelley's state guilty plea, Indiana did not require plea agreements to be in writing and there is no state plea document in the record. A few pages of notes from the state court show the conviction but not the terms of any plea

agreement. Of the parties to the deal, only Kelley has survived long enough to recount the details.

Kelley was paroled on the federal sentence after approximately two years and received an early discharge from parole four years later, in May 1981. At that time, his federal conviction was set aside under the FYCA. He never served any part of the state sentence for the 1975 robbery conviction. The main purpose of the FYCA was to "rehabilitate persons who, because of their youth, are unusually vulnerable to the danger of recidivism." *Ralston v. Robinson*, 454 U.S. 201, 206 (1981). The expungement provision of the FYCA enabled "an eligible youth offender to reenter society and conduct his life free from the disabilities that accompany a criminal conviction." *Tuten*, 460 U.S. at 665. Kelley made little use of the extraordinary second chance afforded by the FYCA, though. Within a year, he was charged with robbery and with murder in the course of another robbery. After two trials and two convictions, he was sentenced in 1982 to forty years' imprisonment on the murder charge, and in 1983 to fifteen years on the second robbery, to be served concurrently with the murder sentence.

Prior to his 1982 sentencing for murder, a presentence investigation report ("PSR") was prepared, detailing his criminal history. The PSR noted that his 1975 federal conviction had been set aside. But the PSR listed the 1975 sandwich shop robbery in his criminal history with no indication that the conviction had been "set aside" or expunged. Kelley objected to the PSR as containing a number of errors, including the failure to indicate that the 1975 state robbery conviction had been set aside. A 1982 report from the National Crime Information Center ("NCIC"), which had been used as a basis for the

PSR, showed that a robbery charge had been dismissed in 1982, and Kelley believed that this entry reflected the state's compliance with the plea agreement. There is no indication in the record of how or even whether the sentencing court resolved Kelley's objection to the PSR. Although the sentencing court relied on Kelley's history of prior criminal activity in setting the forty-year murder sentence, the court did not specifically mention the 1975 robbery conviction as part of that history. When the same judge sentenced Kelley to fifteen years' imprisonment in 1983 for the second robbery, he noted that the "reason for imposing the foregoing sentence is that [Kelley] has a lengthy prior record of criminal behavior dating from his pre-teen years in the juvenile division of the Lake Superior Court culminating in a narcotic conviction in the federal court and an Armed Robbery conviction in the Lake Superior Court in 1975 and again in the Murder conviction in 1982." Kelley was thus on notice as early as 1982, and certainly no later than 1983, that the 1975 sandwich shop robbery was still on his record, and that a court had even weighed it against him for sentencing purposes.

Kelley was released from prison in 2000, well short of the forty years to which he had been sentenced. And although his appointed counsel in this appeal tells us that he earned three college degrees during his lengthy imprisonment, he again failed to use his early release in a positive manner. In 2003, he was convicted of felony check fraud, and in 2005 of felony theft, both in state court. In 2011, he was indicted in the Western District of Missouri on federal charges of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(e)(1) and 924(e)(2)(B), and distribution of a controlled

substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). The firearms charge normally carries a ten year maximum prison term, but the government sought to enhance the sentence under the Armed Career Criminal Act ("ACCA"), which would increase the mandatory minimum to fifteen years. 18 U.S.C. § 924(e). Under the ACCA, the government must demonstrate that the defendant has at least three previous convictions for a violent felony or a serious drug conviction or both. 18 U.S.C. § 924(e)(1). In Kelley's case, the government relied on the convictions for the 1975 sandwich shop robbery, the 1982 murder, and the 1983 robbery.

In 2011, after learning that the government intended to use the 1975 robbery conviction to enhance his federal sentence, Kelley began a series of attacks on that conviction. He started in the Indiana state trial court with a *pro se* motion to withdraw his guilty plea, arguing that the State of Indiana had breached the terms of the plea agreement. The state trial court denied the motion and informed Kelley that if he wished to attack his 1975 conviction or sentence, he would have to file a petition for post-conviction relief. In 2012, Kelley filed a *pro se* petition for post-conviction relief, challenging his conviction and claiming ineffective assistance of counsel. In response, the State of Indiana asserted the affirmative defense of laches, contending that Kelley had waited too long to challenge the 1975 conviction. The post-conviction trial court agreed, finding that the 1982 PSR used in Kelley's murder trial clearly listed the 1975 sandwich shop robbery conviction as part of Kelley's criminal history. The court found that "Kelley was aware as early as December 29, 1982, that the conviction for Robbery in case CR374-707 had not been expunged or vacated." *Kelley v.*

*Indiana*, No. 45G03-1202-PC-00003, slip op. at 4 (Super. Ct. Jan. 25, 2013). Moreover, the court concluded, a lapse of more than thirty years before challenging the conviction was unreasonable, and the State had been prejudiced by the delay. The complaining witness, who would have been ninety-four years old if she were still alive, could not be found. One of the original responding police officers had died, one had moved to Florida and a third could not be located. The file of the Office of the Prosecuting Attorney of Lake County could not be located and was believed to have been destroyed. And both the prosecutor and the defense attorney had died. In short, the court found that laches barred consideration of the merits of Kelley's claims.

The Indiana Court of Appeals affirmed. *Kelley v. Indiana*, No. 45A04-1303-PC-161, slip op. (Ind. Ct. App. Nov. 7, 2013). The court noted that only the minutes of the trial court survived, and that those minutes confirmed the 1975 conviction and suspended sentence but contained no indication that the conviction was ever set aside or that there was any agreement to expunge the conviction. The court noted that, although the FYCA provided a basis for expunging Kelley's federal conviction, Kelley cited no legal basis to expunge his state sentence. As for Kelley's claim that he reasonably believed the NCIC report from 1982 had demonstrated the State's compliance with the plea agreement (showing that a robbery charge had been dismissed), the court noted that Kelley had been charged with another robbery during that time frame, and that the dismissed case had a different case number than the 1975 sandwich shop robbery conviction. The court therefore affirmed the trial court's finding that Kelley had been on notice

as early as 1982 that the State had not expunged the 1975 robbery conviction. Moreover, the sentencing court for Kelley's 1983 robbery also made use of the 1975 robbery conviction in noting Kelley's criminal history and justifying the sentence in that case. The state appellate court also noted that, between his 2000 release from prison and the 2011 federal charge, Kelley had been convicted in 2003 of felony check fraud, and in 2005 of felony theft, providing additional contacts with the criminal justice system where he presumably would have been given notice that the 1975 robbery conviction remained on the books. In addition to affirming the finding that Kelley was on notice by 1983 that the 1975 robbery conviction had never been expunged, the appellate court also affirmed the finding that a thirty-seven year delay between notice of the alleged defect and the filing of a collateral challenge was unreasonable and caused prejudice to the State. As the appellate court noted, because none of the original witnesses or evidence could be found after a nearly four-decade delay, "[f]or all practical purposes, re-prosecution would be impossible." The court thus affirmed in full the judgment of the post-conviction court that the claim was barred by laches. The Indiana Supreme Court declined Kelley's request to accept jurisdiction over his case.

After losing his post-conviction claims in Indiana and shortly before his federal sentencing, Kelley turned to the federal courts for relief on the 1975 robbery conviction. In May 2014, he filed a petition for *habeas corpus* relief under 28 U.S.C. § 2254 in the district court for the Western District of Missouri, challenging the constitutionality of the 1975 Indiana robbery conviction and sentence. Citing 28 U.S.C. § 2241(d), the Missouri district court transferred the case to the Northern

District of Indiana "because petitioner's claims relate to actions taken in that District, and the relevant records will be located in that District." *Kelley v. United States*, No. 14-0451-CV-W-ODS-P, slip op. at 2 (W.D. Mo. May 28, 2014).

The court in the Northern District of Indiana dismissed the case for lack of jurisdiction. *Kelley v. Indiana Attorney General*, No. 2:14-CV-196-TLS, slip op. at 2 (N.D. Ind. July 8, 2014). The court noted that, in order to challenge a conviction under section 2254, a petitioner must be "in custody" under the conviction or sentence under attack at the time his petition is filed. Kelley was not in custody on the 1975 robbery conviction and in fact agreed that he had never been in custody on that conviction. He had not yet been sentenced in the Missouri district court, and so had not yet suffered any direct or collateral consequences from the 1975 robbery conviction. Indeed, at the time that his section 2254 petition reached the district court in Indiana, Kelley was still in the process of objecting to the use of the 1975 robbery conviction in the Missouri court, and his sentencing hearing had not yet been held. He was therefore not even in custody on a sentence that had been enhanced by the 1975 robbery conviction much less in custody on the 1975 robbery conviction itself. The court therefore dismissed for lack of jurisdiction on July 8, 2014. On July 18, 2014, Kelley filed a motion for reconsideration under Federal Rule of Civil Procedure 59(e), or for a certificate of appealability. On July 23, 2014, the court denied the Rule 59(e) motion and the request for a certificate of appealability.

On August 4, 2014, the federal court in Missouri held a sentencing hearing.[1] Kelley again objected to the use of the 1975 robbery conviction to enhance his federal firearms sentence, citing the NCIC report as evidence that it had been dismissed in 1982. The government pointed out that the entry showing dismissal of a robbery charge bore no case number and there was no certified record showing that the conviction had ever been expunged. The court concluded that the government met its burden of demonstrating three prior violent felonies or serious drug crimes, justifying application of the ACCA enhancement. The court counted the 1975 sandwich shop robbery conviction as one of the three qualifying felonies, and sentenced Kelley to 188 months' imprisonment.

Three days later, Kelley filed an application in this court pursuant to 28 U.S.C. § 2244(b)(3), seeking authorization to file a second or successive petition for a writ of *habeas corpus* under section 2254. We construed his application as a notice of appeal from the Indiana district court's decision dismissing his *habeas corpus* petition. We appointed counsel to address three questions on appeal:

> 1. Did the state breach a promise to expunge Kelley's 1975 conviction; and

---

[1] To clarify the time line, we note that in 2013, Kelley had formally pled guilty in federal court in Missouri to the 2011 federal charges of being a felon in possession of a firearm and distributing a controlled substance. The Missouri court did not sentence Kelley until August 2014. By then, he had completed post-conviction proceedings in the State of Indiana, attacking the 1975 robbery conviction, and had also challenged that conviction in the federal district court in Indiana.

2. Is Kelley's 1975 conviction essential to his ACCA designation; and

3. Whether Kelley has had no other realistic opportunity to seek expungement, and therefore may present the sort of rare case contemplated by *Daniels v. United States*, 532 U.S. 374, 383 (2001) ("We recognize that there may be rare cases in which no channel of review was actually available to a defendant with respect to a prior conviction, due to no fault of his own.").

*Kelley v. Lemmon*, No. 14-2755, Order at 2 (7th Cir. Aug. 28, 2014).

## II.

On appeal, Kelley contends that, for the purposes of a section 2254 petition, he is "in custody" on the 1975 robbery conviction because that conviction was essential to his designation under the ACCA. Because the State of Indiana breached its agreement to expunge the 1975 robbery conviction, he argues, his custody is in violation of his constitutional rights. This is the "rare case" to which the Supreme Court referred in *Daniels*, he maintains, because he never had any realistic opportunity to pursue relief for the breach of the plea agreement. The State counters that Kelley's petition is untimely, that Kelley does not meet the "in custody" requirement for a section 2254 petition, and that even if we construed Kelley's petition as a section 2255 motion, his claim would still fail. Our review of the district court's decision to dismiss the *habeas* petition is *de novo*. *Stanbridge v. Scott*, 791 F.3d 715, 718 (7th Cir. 2015).

Section 2254 provides, in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

28 U.S.C. § 2254(d)(1). *See also Williams v. Taylor*, 529 U.S. 362, 402–03 (2000); *Bolton v. Akpore*, 730 F.3d 685, 693 (7th Cir. 2013). We must begin with the threshold question of whether Kelley is "in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(d)(1). The Supreme Court has "interpreted the statutory language as requiring that the *habeas* petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed." *Maleng v. Cook*, 490 U.S. 488, 490–91 (1989); *Stanbridge*, 791 F.3d at 718. At the time that Kelley filed his petition, he was not in custody in Indiana on the 1975 robbery conviction. Nor had he been sentenced on the federal firearms charges and so his 1975 robbery conviction had not yet been used to enhance his sentence under the ACCA. Under *Maleng*, a *habeas* petitioner is not considered to be in custody "under a conviction after the sentence imposed for it has fully expired, merely because of the possibility that the prior conviction will be used to enhance the sentences imposed for any subsequent crimes of which he is convicted." *Maleng*, 490

U.S. at 492; *Stanbridge*, 791 F.3d at 718. The district court was therefore correct that Kelley was not "in custody pursuant to the judgment of a State court" for the purposes of the *habeas* statute, and the court lacked jurisdiction over his case. *Maleng*, 490 U.S. at 492; *Stanbridge*, 791 F.3d at 719–20. *See also Talbott v. Indiana*, 226 F.3d 866, 870 (7th Cir. 2000) (noting that a federal prisoner sentenced under the ACCA is not entitled to wage a collateral attack in federal court directly against a State sentence under section 2254 because he is not in custody under that sentence but rather must proceed under section 2255 because his custody is federal and his ultimate objection is to the length of his federal sentence). We must therefore affirm the judgment dismissing the petition for lack of jurisdiction.

Of course, immediately after the district court dismissed the section 2254 petition, the Missouri district court sentenced Kelley for the firearms charge, using the 1975 robbery conviction as one of the predicate offenses to enhance the sentence under the ACCA. Kelley is now in federal custody on the firearms charge and a federal court would, in general, have jurisdiction to consider a challenge to the sentence for the firearms charge as enhanced by the allegedly invalid prior state conviction:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by

> law, or is otherwise subject to collateral
> attack, may move the court which imposed
> the sentence to vacate, set aside or correct the
> sentence.

28 U.S.C. § 2255(a). *See also Johnson v. United States*, 544 U.S. 295, 304 (2005) (a prisoner could proceed under section 2255 after successful review of the prior state conviction on federal habeas under section 2254 or favorable resort to any post-conviction process available under state law).

In theory, a court could construe Kelley's *pro se* section 2254 petition as a motion under section 2255 in order to consider his claim. *Osagiede v. United States*, 543 F.3d 399, 405 (7th Cir. 2008) (although *pro se* petitioners at times confuse legal theories or draw the wrong legal implications from a set of facts, we do not treat every technical defect as grounds for rejection). "We have repeatedly emphasized that *pro se* petitions are to be construed liberally, and should be held to standards less stringent than formal pleadings drafted by attorneys." *Ambrose v. Roeckeman*, 749 F.3d 615, 618 (7th Cir. 2014). *See also Ray v. Clements*, 700 F.3d 993, 1002–03 (7th Cir. 2012) (recognizing the complexity of the prescriptive procedural rules in federal court, "we oftentimes relax those rigid requirements when a litigant appears in federal court unrepresented"), citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, as the respondent State of Indiana points out here, if Kelley meant to file a motion under section 2255, he is in the wrong court with the wrong respondent. The right court for a section 2255 motion would be, ironically, the federal court in Missouri where Kelley initially filed his section 2254 petition. The correct respondent would be the United States. We could remand to

the district court in Indiana with directions to transfer the case back to Missouri so that the district court there could consider Kelley's claims under section 2255 if it wished to do so. But even if the problems we highlighted could be fixed, we see no need to remand for such an action because Kelley could not win his claim even in a properly filed section 2255 proceeding.

Although defendants may generally challenge their federal sentences as described in section 2255, the Supreme Court has held that they may not use section 2255 to collaterally attack the validity of previous state convictions used to enhance a federal sentence under the ACCA, except in very limited circumstances. *Daniels v. United States*, 532 U.S. 374, 376 (2001). In fact, if at the time of federal sentencing under the ACCA, a prior conviction has not been set aside on direct or collateral review, the conviction is considered presumptively valid and may be used to enhance the federal sentence. *Daniels*, 532 U.S. at 382 (citing *Custis v. United States*, 511 U.S. 485, 497 (1994)).

> This rule is subject to only one exception: If an enhanced federal sentence will be based in part on a prior conviction obtained in violation of the right to counsel, the defendant may challenge the validity of his prior conviction during his federal sentencing proceedings. No other constitutional challenge to a prior conviction may be raised in the sentencing forum.

*Daniels*, 532 U.S. at 382 (internal citations to *Custis* omitted). In *Daniels*, the Court extended that exception to section 2255 challenges to federal sentences that have been enhanced under

the ACCA by prior state court convictions, so long as the defendant preserved the claim at his federal sentencing proceeding. *Daniels*, 532 U.S. at 382 ("A defendant may challenge a prior conviction as the product of a *Gideon* violation in a § 2255 motion, but generally only if he raised that claim at his federal sentencing proceeding.").

The Court noted that defendants are not without recourse for determining whether a state court conviction later used to enhance a federal sentence was unconstitutionally obtained. *Daniels*, 532 U.S. at 380–81. A defendant convicted in state court may raise constitutional claims on direct appeal, in post-conviction proceedings available under state law, and in a section 2254 petition. 532 U.S. at 381. The Court acknowledged that these pathways to review are subject to their own limitations, noting that if "a prior conviction used to enhance a federal sentence is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), then that defendant is without recourse," except in the case of a conviction obtained in violation of the right to counsel. *Daniels*, 532 U.S. at 382.

But a plurality of the Court also recognized that "there may be rare cases in which no channel of review was actually available to a defendant with respect to a prior conviction, due to no fault of his own." *Daniels*, 532 U.S. at 383. Because that scenario was not presented by the facts in *Daniels*, the Court reserved the question of whether a defendant could file a section 2255 motion to challenge such a prior conviction. As we noted above, we asked appointed counsel to answer, in part, whether this is one of those rare cases.

Kelley contends that this is one of those rare instances where a defendant had no prior opportunity to challenge the state court conviction being used as a predicate under the ACCA. He had no reason or opportunity to lodge any challenge to the state conviction, he argues, because he had no cause to believe that the State had failed to hold up its end of the bargain until 2011, when the government sought to use the 1975 conviction against him at federal sentencing proceedings. By then, his efforts to raise the breach of the plea deal in post-conviction proceedings were hampered by the passage of time and the loss of critical records needed to prove his case. But the underlying factual premise of this argument is faulty: the state courts concluded that Kelley did in fact know that the 1975 conviction had not been expunged as early as 1982 or 1983 when he was sentenced on murder and robbery charges. The state courts also concluded that his delay in seeking a remedy for that breach was not reasonable.

Moreover, the conclusion of the Indiana post-conviction courts that Kelley's claim was barred by laches is an adequate and independent state law ground that prevents collateral review of the claim. "If a state court clearly and expressly states that its judgment rests on a state procedural bar and does not reach the merits of a federal claim, then we are unable to consider that claim on collateral review." *Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010) (citing *Harris v. Reed*, 489 U.S. 255, 263 (1989)). *See also Coleman v. Thompson*, 501 U.S. 722, 729 (1991) ("This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."). Here, the state courts

rested on the doctrine of laches in denying Kelley's claim for post-conviction relief. That adequate and independent state law ground for denying the claim may not be reviewed by a federal court. *See Rhodes v. Dittmann*, 783 F.3d 669, 675–76 (7th Cir. 2015) (holding that a state court's decision to deny a petitioner's claim based on untimeliness was an independent and adequate ground for the state court's decision, precluding federal collateral review).

### III.

Finally, we note that the State of Indiana did not have a statute allowing for expungement of criminal convictions until 2013, nearly forty years after Kelley asserts that Indiana prosecutors agreed to expunge his conviction upon successful completion of his federal sentence. *See* Ind. Code § 35-38-9-1 *et seq.* (2013); *Taylor v. State*, 7 N.E.3d 362, 366–67 (Ind. Ct. App. 2014) (noting that the Indiana legislature passed the expungement statute in 2013 in order to give "individuals who have been convicted of certain crimes a second chance by not experiencing many of the stigmas associated with a criminal conviction–especially where an individual has completed the requirements established by the trial court and has since been a law-abiding citizen"). Although Kelley cited the FYCA as the law authorizing expungement of his federal conviction, he has never cited any Indiana law that would have allowed expungement of a state conviction in 1975. Nor has he ever asserted that prosecutors tried to mislead him regarding the terms of his plea agreement or the availability of expungement in Indiana, and we note that he was represented by counsel at the time. It therefore seems unlikely that his 1975 plea agreement with the State of Indiana contained the terms that Kelley asserts. In any

case, the terms of the plea agreement are no longer relevant: the Indiana courts have concluded that Kelley waited too long to challenge the 1975 robbery conviction, and we may not review that judgment. For all of the foregoing reasons, the judgment of the district court is

AFFIRMED.